# Wetherill *against* Seitzinger.*

The Act of 31st March 1792, "to enable executors and administrators by leave of court to convey lands and tenements contracted for with their decedents," &c. is applicable to a case in which a decedent received from his debtor a conveyance in fee of certain land, absolute on its face, and at the request of the debtor, received from another person a conveyance in fee of other real estate, and afterwards wrote letters, referring to the whole as the debtor's property, which he was ready to re-convey to him upon the repayment of the debt.

ON the 1st April 1830, Jacob W. Seitzinger conveyed to Samuel P. Wetherill in fee, an undivided third of 8182½ acres and allowance, part of the Broad Mountain tract in Schuylkill county. In the following spring, under two deeds from Nathaniel P. Hobart and wife, the said Samuel P. Wetherill, at the request of the said J. W. Seitzinger, acquired the legal fee in four undivided fifths of a "coal reserve" or privilege of mining for coal in (inter alia) 91 acres 16 perches strict measure, in Norwegian township, in the same county. By three letters written and signed by Wetherill in his lifetime, he recognised Seitzinger as entitled of right to receive from him a re-conveyance of the lands and hereditaments included in the above conveyances, upon the repayment of the moneys due to him by Seitzinger; and in one of the letters engaged to re-convey them to Seitzinger upon the repayment of such moneys, or upon the substitution of any other security sufficient to secure the amount of Seitzinger's debt to him. After the death of Wetherill, there was a final settlement of accounts between his representative and Seitzinger, by which the amount due by Seitzinger to the estate of Wetherill was ascertained, and fixed at a sum which he was ready to pay on receiving a conveyance of the said lands and hereditaments, which by reason of the minority of some of the representatives of Wetherill, could not be made in the usual manner.

Seitzinger presented a petition to this court, and was permitted to make proof of the contract, of which the abovementioned letters were the evidence. Upon the return of the proofs, the Prothonotary was directed by the court to annex and certify the same for record in Schuylkill county, according to the provisions of the Act of 31st March 1792 and its supplements. The proofs having been recorded in Schuylkill county, the administratrix of Wetherill presented a petition, praying leave to execute a deed to Seitzinger and his heirs. To this petition Seitzinger demurred, assigning for cause, that the court had no jurisdiction, because there was not

---

* The reporters are indebted to Mr Cadwalader for the report of this case.

[Wetherill v. Seitzinger.]

such a contract of the deceased Wetherill, as is within the purview
or meaning of the Act of 31st March 1792 or its supplements,
praying that if the demurrer be overruled, the paper containing
it might stand as an answer, and in that case, admitting the alle-
gations of the petition, averring his readiness, &c. and submitting
to the order of the court.

*Cadwalader*, in support of the demurrer, contended that the
preamble, as well as the body of the Act of 31st March 1792,
*Purd*. (1841) 176, contained language restricting its application
to contracts falling within the proper legal definition of a sale and
purchase. He also relied upon the contents of the supplementary
Act of 14th April 1794, (3 *Sm. L*. 129, 130), as sustaining in all
its parts this construction of the original act; and referred for the
same purpose to portions of the first and second sections of the
farther supplement of 10th March 1818, (7 *Sm. L*. 79). He cited
*Young* v. *Pleasants*, (3 *Yeates* 317), and *Park* v. *Marshall*, (4 *Watts*
383), as cases in which the court used language tending thus to re-
strict the application of the Act of 1792, and referred to *Hagerty's
Case*, (4 *Watts* 305), in which it was held that the Act of 1792
was not applicable to the case of a voluntary conveyance, and that
the supplement of 1818 was not applicable to the case of a parol
gift from a father to a son, under which possession had been taken
and improvements made upon the land.

*Randall*, for the petitioner, observed that this was not the case
of a voluntary conveyance, and therefore *Hagerty's Case* was not
in point. In that case, the gift would not have been enforced in a
Court of Chancery. The other cases cited were those of actual
sales, and the language incidentally used by the judges was to be
explained by thus referring to its application. In the present case,
although the contract, strictly speaking, was not a sale and pur-
chase, it was one of binding obligation founded upon a sufficient
legal consideration. It is one which a Court of Equity would en-
force. All such contracts of deceased persons relating to lands
are within the enactments of the Act of 1792. Its enacting clauses
are not to be controlled by the preamble. *Seidenbender* v. *Charles*,
(4 *Serg. & Rawle* 166), and cases cited. Examples of the applica-
tion of this rule to cases analogous to the present are to be found
in *Bank of North America* v. *Fitzsimmons*, (3 *Binn*. 356), and (1
*Watts* 15, 335). In *Mercer* v. *Watson*, (1 *Watts* 355), Chief Justice
GIBSON says of another Act of the Legislature: " Undoubtedly a
sale is put as an instance in the preamble; but the enacting clause
is applicable in its terms to every *bonâ fide* conveyance whatever."
So here, although the evil of an unexecuted sale is mentioned in
the preamble of the Act of 1792, as that of most frequent occur-
rence, yet the enactments are broad enough to cover all contracts
relating to lands, of which the consideration was such as to render

[Wetherill v. Seitzinger.]

them binding between the parties.   All such contracts are within the mischief to be remedied.  Statutes are to be construed according to the state of things existing at the time of their enactment. At the date of this Act there was in Pennsylvania no remedy to compel the execution of trusts express or implied, and no case can be imagined in which legislative remedy was more needed than it was at that date in the case of a party bound to convey or reconvey lands on the repayment of a debt.  [Judge ROGERS.  Is this case anything more or less than a mortgage?]   In regard to the Broad Mountain lands, it is perhaps, a transaction of the nature of a mortgage.  This does not affect the argument.  A defeasance not recorded or proved or acknowledged, if signed according to the requisitions of the Statute of Frauds, however void it may be as to third persons under the recording Acts, will be binding upon the party subscribing it and his heirs, and perhaps also upon strangers having notice of it.   This sort of case was one which especially required legislation in 1792.   As to the use of the word "purchaser" and "consideration money" in the Act of 1792 and the supplement of 1818, they are, in their technical sense, applicable to any person having a right to acquire a title on the payment of a sum of money.  The supplemental Act of 1794 is applicable to the case of lunatics only, and if of more limited scope than the other Acts, ought not to be permitted to narrow their meaning so as to exclude cases within the scope and operation of the broader terms contained in them.

*Cadwalader* in reply.  The Act of 1794, being a supplement to and in *pari materiâ* with the Act of 1792, is to be read with it as if it formed a part of it.  Thus read, it is conclusive of the present question.  We admit the doctrine that the enactments of a statute are not to be controlled by prefatory recitals in the preamble, but contend that the enactments of the Act of 1792 are such as necessarily connect themselves with this part of the preamble.  The use of the word "purchaser" and "consideration money" in the enacting clauses, serves to define the purpose and objects of the Act and to limit its application.  Without the clauses which contain these words, the portions of the act relied on by the petitioner's counsel are incomplete, and their provisions would result in nothing practical.  They therefore cannot be detached and considered separately.   The words are obviously used in their popular and ordinary sense, and not in the artificial legal sense imputed to them on the other side.   There is no evidence that the Act of 1792 has ever received the construction contended for on the part of the petitioner, while there is both legislative and judicial authority in favour of that construction which will sustain the demurrer.

PER CURIAM.—The court are of opinion that under the statutes

[Wetherill v. Seitzinger.]

of this Commonwealth in that behalf provided, the court is possessed of jurisdiction of the contract in the petition mentioned, upon the proofs therein mentioned heretofore certified for record in the county of Schuylkill. Whereupon it is ordered, decreed and considered, that the demurrer of Jacob W. Seitzinger be overruled, and that the petitioner, Charlotte W. Wetherill, have leave to execute a conveyance to the said Jacob W. Seitzinger and his heirs, of the lands, tenements and hereditaments in the petition mentioned, according to the prayer therein contained.

Demurrer overruled.